UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAYLIN ARSELL HOLMAN, SR.,

        Petitioner,

v.                                         CASE NO. 04-CV-60087-AA
                                         HONORABLE MARIANNE O. BATTANI

JOHN CASON,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

This matter is pending before the Court on Petitioner's *pro se* habeas corpus petition under 28 U.S.C. § 2254. Respondent argues in an answer to the habeas petition that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, and without merit. The Court had concluded that Petitioner's claims lack merit and that the habeas petition must be denied.

### I. Background

### A. The State Court Proceedings

On September 1, 1992, a jury in the former Recorder's Court for the City of Detroit, Michigan found Petitioner guilty of second-degree murder, MICH. COMP. LAWS § 750.317, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. The state court summarized the evidence leading to these convictions as follows:

> At trial, three eyewitnesses testified that they saw defendant and the victim, a drug dealer, talking in the living room of a crack house. Each witness heard a gunshot and saw the victim fall. Defendant was standing close by with a black revolver in his hand. None of the witnesses actually saw defendant shoot the victims. The victim's body was recovered from an alley less than a mile from

> the crack house.  No evidence was presented at trial explaining how the body was moved.  Because the crack house burned down the day after the victim's body was discovered, police were unable to investigate the murder scene.  Defendant's theory of the case was that he was not present at the crack house when the eyewitnesses claimed to have seen him there.

*People v. Holman*, No. 160184, at 1 (Mich. Ct. App. Nov. 28, 1994).  The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of twenty-five to fifty years in prison for the murder conviction.

On direct appeal from his convictions, Petitioner argued through counsel that (1) trial counsel did not receive a witness list until trial and failed to request time to study the case or to interview witnesses, (2) trial counsel failed to make a motion in limine to exclude evidence of drug trafficking, (3) the prosecutor improperly asked the defendant whether he had read police reports, the exam transcripts, and other material, (4) the prosecutor impeached him on collateral matters, (5) the jury instructions failed to instruct the jury on the testimony of accomplices, (6) trial counsel failed to inform the jury of the defendant's theory of the case, (7) the prosecutor improperly argued that the police believed in the defendant's guilt, (8) the prosecutor improperly argued that the defendant must be guilty because he was unable to explain why people brought accusations against him, (9) the evidence was insufficient in that there was no evidence of the defendant's state of mind and no evidence to corroborate the witnesses' testimony, (10) the prosecutor improperly argued that the defendant had a motive to lie, (11) trial counsel made unnecessary stipulations regarding a .38 caliber pistol, (12) the jury instructions were inadequate on the matter of lesser-included offenses, and (13) the sentence was not proportionate.  The Michigan Court of Appeals was unpersuaded by these arguments and affirmed Petitioner's convictions and sentence in an unpublished, *per curiam* opinion.  *See id.*

Petitioner raised the same issues and two new issues in the Michigan Supreme Court. The new issues alleged that the murder investigation was lax or inadequate. The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Holman*, No. 101962 (Mich. Sup. Ct. July 28, 1995).

In 1997, Petitioner filed a "motion to remand" in the trial court. He sought an evidentiary hearing on new evidence that (1) the owner of the vehicle that supposedly was used to move the victim's body after the shooting was Welch Yancey's mother and (2) Shannon Yancey was on probation when he testified against Petitioner. The trial court denied Petitioner's motion because the "new evidence" did not rebut the inference that Petitioner shot the victim. Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal the trial court's decision on the ground that Petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Holman*, No. 223628 (Mich. Ct. App. July 11, 2000); *People v. Holman*, No. 117561 (Mich. Sup. Ct. Jan. 30, 2001).

In 2002, Petitioner filed a motion for relief from judgment in which he alleged (1) a violation of the 180-day, speedy trial rule, (2) prosecutorial misconduct (admitting false evidence), (3) ineffective assistance of trial counsel (failure to attack insufficient evidence), (4) actual innocence, (5) ineffective assistance of trial and appellate counsel (lack of preparedness), (6) disproportionate sentence, and (7) cumulative effect of errors. The trial court denied the motion, and the Michigan Court of Appeals dismissed Petitioner's application for leave to appeal the trial court's decision. The court of appeals stated that it lacked jurisdiction to consider Petitioner's claims because his motion was a second or successive post-conviction motion. *See* Mich. Ct. R. 6.502(G) (generally limiting criminal defendants to one motion for relief from

judgment). The court of appeals also ruled that Petitioner had failed to file a timely application for leave to appeal. *See People v. Holman*, No. 247572 (Mich. Ct. App. Apr. 16, 2003). The Michigan Supreme Court denied leave to appeal because Petitioner's motion for relief from judgment was prohibited by Michigan Court Rule 6.502(G). *See People v. Holman*, No. 124033 (Mich. Sup. Ct. Oct. 31, 2003).

### B. The Federal Court Proceedings

Petitioner filed his habeas corpus petition on May 11, 2004. The issues are:

I. Whether Petitioner was deprived of his Sixth and Fourteenth Amendment right to due process where the totality of the evidence was not issued to counsel for the petitioner or petitioner where such evidence would exonerate the petitioner of the alleged charged offense?

II. Whether Petitioner was denied his constitutional right to due process when the elements of the charged offense were not proven nor was any connections established between Petitioner and the deceased?

III. Whether Petitioner was deprived of his constitutional right to a fair trial and appellate review when the existence of evidence and information is called to rise, thus, the application of law used was wrong, unreasonable and contrary to the United States Supreme Court?

IV. Whether Petitioner was deprived of his Fourteenth Amendment rights and fair appellate review, when new evidence surfaces and the state court fails to address by way of issuing violative discretion and denial of evidentiary hearing upon request?

V. Whether Petitioner was deprived of his constitutional right to a fair trial where the prosecutor allowed false and perjured testimony to enter into the trial without correcting it, allowing a fraud to be perpetrated upon the courts?

VI. Petitioner was deprived of his ability to fully present evidence regarding his ineffective assistance of counsel claims guaranteed under the Sixth Amendment when the state court refused to

        remand Petitioner's case to the trial court when Petitioner filed his appeals as of right and motion for remand with the proper proofs pursuant to *People v. Ginther*, 390 Mich. 436 (1973), and when the court refused to address numerous exhibits attached thereto his briefs and motions because the court applied the wrong law and abuse of discretion?

VII.    Whether Petitioner was deprived of a fair trial under the Fifth, Sixth, and Fourteenth Amendments, when there is a questionable and unanswered question as to the vehicle used by Welch Yancy to move the deceased, and the relationships of all three witnesses may prove the petitioner did not have any contact or motive to kill the decedent, but that the witnesses and the police's prime suspect had motive, opportunity, and design and his own son, his son's life long neighbors back up a scheme to deal with the prosecutor and police?

VIII.    Whether Petitioner was deprived of his Fourteenth Amendment right to a fair trial when there is no evidence to establish[] intent, motive, design, malice, and provocation that could be shown that this petitioner actually caused the death of the deceased, and that no weapon or other testing was done to prove beyond a reasonable doubt that this petitioner fired or used a firearm in any crime or murder or any killing of a human being.

IX.    Whether Petitioner was deprived of his Fourteenth Amendment right to due process when he was held in the county jail past 180 days awaiting trial in violation of the United States Constitution and the United States Supreme Court's decisions?

X.    Whether Petitioner should have his sentence vacated when the trial judge failed to explain why Petitioner was sentence[d] to such a high-ended term without explanation as required by law?

XI.    The threshold habeas corpus inquiry and the cumulative effects of all claims combined, deprived Petitioner [of] his fundamental [right to] due process of law and a fair trial and balance of appellate review in the state courts.

Respondent filed a motion to dismiss the habeas petition on the ground that these claims were barred from substantive review by the statute of limitations. The Court denied Respondent's motion and ordered him to file an answer to the habeas petition. In his

5

subsequently filed answer, Respondent urges the Court to deny the habeas petition.

Respondent contends that several of Petitioner's claims are procedurally defaulted. "Procedural default is not a jurisdictional bar to review on the merits," *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, __, 126 S.Ct. 1032 (2006), and the Court believes that it is easier to address the merits of Petitioner's claims than to analyze the claims under the doctrine of procedural default. Therefore, the Court will excuse the alleged procedural defaults and proceed to address Petitioner's claims on the merits.

## II. Standard of Review

A court may issue the writ of habeas corpus only if the petitioner shows that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even

require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original).

> When the state court has not addressed or resolved claims based on federal law, courts
>
>> have held that the decision is not an "adjudication on the merits." Thus, a federal habeas court reviews such unaddressed claims de novo. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir.2003) (distinguishing "no results" from no reasoning).
>
>> Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis . . . a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir.1999)).
>
>> The independent review, however, is not a full, de novo review of the claims. *Id*. [T]he review remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA. *Id*.

*Howard*, 405 F.3d at 467-68.

### III.  Discussion

### A.  Failure to Disclose

The first habeas claim appears to allege that the prosecutor withheld exculpatory information from defense counsel. No state court adjudicated this claim on the merits. Consequently, this Court's review is *de novo*.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  A true *Brady* violation has three components: "The evidence at issue must be favorable to the

accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985)).

According to Petitioner, the prosecutor failed to disclose that (1) Petitioner did not fire the weapon that killed the victim, (2) Welch Yancey and Shannon Yancey described the events to the police in such a way as to exculpate themselves, (3) the victim was transported from the crime scene in a vehicle owned by Welch Yancey's mother, and (4) the investigator knew that the vehicle belonged to the Yanceys. The evidence adduced at trial indicates that Petitioner fired the murder weapon. There is no support in the record for the contention that someone else fired the fatal shot, and information about the vehicle supposedly used to move the victim's body was not relevant to the issues in dispute. Because the facts do not support Petitioner's claim that the prosecutor withheld material evidence, Petitioner's *Brady* claim has no merit.

### B. Sufficiency of the Evidence

The second, seventh, and eighth habeas claims challenge the sufficiency of the evidence to support Petitioner's murder conviction. The Michigan Court of Appeals adjudicated Petitioner's sufficiency-of-the-evidence claim on the merits and concluded that there was sufficient evidence to support Petitioner's murder conviction.

The Supreme Court has stated that "the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). "After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

> In Michigan,
>
> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Bailey*, 451 Mich. 657, 669; 549 N.W.2d 325 (1996).
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980).

*People v. Goecke*, 457 Mich. 442, 463-64; 579 N.W.2d 868, 878 (1998). Malice can be inferred from the evidence. *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304, 326-27 (1980).

Petitioner alleges that the prosecutor did not establish the elements of second-degree murder and did not prove any connection between him and the deceased. Petitioner contends that there was no evidence of intent, motive, design, malice, or provocation and no evidence that he used a firearm to kill the victim. He also asserts that there is an unanswered question about the vehicle used to move the decedent.

The lack of evidence about the vehicle used to move the victim's body is irrelevant. The elements of the offense were established despite the prosecutor's inability to explain how and

when the body was moved.  As succinctly stated by the Michigan Court of Appeals, "[t]hree eyewitnesses testified that they heard a gunshot and saw the victim falling while defendant stood close by with a gun in his hand."  *Holman*, Mich. Ct. App. No. 160184, at 2.  Although the eyewitnesses did not actually see Petitioner fire a gun at the victim, they claimed that he was the only person in the room with a gun.  The prosecutor was not required to prove motive, *People v. Rice (On Remand),* 235 Mich. App. 429, 440; 597 N.W.2d 843, 850 (1999), and a rational trier of fact could have inferred malice from the fact that the victim was shot with a deadly weapon.  *People v. Carines*, 460 Mich. 750, 759; 597 N.W.2d 130, 136 (1999).

Petitioner appears to argue that someone else was the killer.  Reviewing courts, however, are not obligated to "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  The Court may not "reject the jurors' credibility determination," nor "upset the jurors' verdict simply because the evidence does not 'rule out every hypothesis except that of guilt beyond a reasonable doubt.'" *DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998) (quoting *Jackson*, 443 U.S. at 326).

A rational trier of fact could have concluded from all the evidence that Petitioner killed the victim by shooting him.  Therefore, the state appellate court's determination that the evidence was sufficient to support Petitioner's murder conviction was not an unreasonable application of *Jackson*.  Petitioner is not entitled to habeas relief on the basis of claims II, VII, and VIII.

### C.  The State's Court's Failure to Address Claims or to Hold a Hearing

The third habeas claim alleges that Petitioner was deprived of his constitutional right to a

fair trial and direct appellate review because the state court's decision was unreasonable and contrary to Supreme Court precedent. The fourth habeas claim alleges that the state court failed to address Petitioner's claim of new evidence and declined to hold an evidentiary hearing. The sixth habeas claim alleges that Petitioner's trial and appellate attorneys were ineffective and that Petitioner was deprived of his ability to present evidence regarding his ineffective-assistance-of-counsel claims. Petitioner also alleges that the state court refused to address his motions and the exhibits attached to his briefs.

The Court knows of no federal constitutional right to have a state court consider an appellant's claims on direct review of a criminal conviction. In fact, the Supreme Court has acknowledged the discretion accorded a state appellate court by stating that complying with the federal exhaustion requirement of 28 U.S.C. § 2254(b) does not depend on "whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court . . . ." *Smith v. Digmon*, 434 U.S. 332, 333 (1978).

Petitioner's complaint about the state court decisions on his post-conviction motions and related appeals lacks merit because he had no federal constitutional right to state collateral review of his conviction. *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). Therefore, the alleged inadequacies in the state court decisions on collateral review did not violate the Constitution. Furthermore, the trial court's decision on whether to hold an evidentiary hearing is a matter of state law, *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 449 (D. Del. 1998), and a perceived error of state law is not a basis for granting habeas corpus relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In conclusion, the state courts' failure to address Petitioner's claims or to provide an

evidentiary hearing did not violate any federal constitutional right. Therefore, Petitioner is not entitled to habeas relief on the basis of his third, fourth, and sixth claims.

## D. Perjury

The fifth habeas claim alleges that the prosecutor perpetrated a fraud upon the courts and allowed false and perjured testimony to go uncorrected. A prosecutor's "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Id.* at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). However, to prevail on a claim that the prosecutor knowingly used false testimony, a petitioner "must show that the statements were material, that they were actually false, and that the prosecution knew they were false." *United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992).

The habeas petition does not identify the testimony that Petitioner believes is perjury, but Petitioner alleges in a reply to Respondent's answer that all three eyewitnesses committed perjury. Eyewitness Shannon Yancey admitted at trial that, initially, he did not inform the police about the shooting he had observed. He explained that he had been afraid of Petitioner at the time. Yancey maintained in his second statement to the police and at trial that Petitioner shot the victim with a handgun. (Tr. Aug. 31, 1992, at 62-63, 71-72.)

Yancey's testimony was consistent with the testimony of the other two eyewitnesses. None of them actually saw Petitioner fire the gun, and they did not know what motivated Petitioner to shoot the victim. However, they claimed that Petitioner was the only person in the

living room with the victim and that Petitioner was holding a gun by his side immediately after they heard the gunshot. They also claimed that they were able to see Petitioner clearly from the dining room where they were seated.

The record does not support the contention that the eyewitnesses' trial testimony was false. Accordingly, the state courts' rejection of Petitioner's claim was not contrary to *Giglio*.

### E.  The Speedy Trial Claim

The ninth habeas claim alleges that Petitioner was deprived of his right to due process when he was held in the county jail more than 180 days while awaiting trial. The alleged violation of the State's 180-day rule, MICH. COMP. LAWS § 780.131, is not cognizable on habeas review, because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner's constitutional claim arises under the Sixth Amendment, which provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ." U.S. CONST. VI. Factors that courts should consider when evaluating a speedy trial claim are: the length of the delay, the reason for the delay, the defendant's assertion of the right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

> The length of the delay is a threshold requirement. If the length of the delay is not "uncommonly long," then judicial examination ends. *Doggett v. United States*, 505 U.S. 647, 652 (1992). The length of the delay is measured from the date of the indictment or the date of the arrest, whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Redd v. Sowers*, 809 F.2d 1266, 1269 (6th Cir. 1987). A delay approaching one year is presumptively prejudicial and

13

triggers application of the remaining three factors. *Doggett*, 505 U.S. at 652 n.1. *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005).

Petitioner raised his speedy trial claim on the first day of trial. The trial court denied his motion to dismiss the case after the prosecutor calculated the pretrial delay at 177 days. (Tr. Aug. 31, 1992, at 3-4.) Petitioner maintains that he was held in custody for 206 days before trial. Even assuming that Petitioner's calculation is accurate, the delay was not presumptively prejudicial because it did not begin to approach one year. Consequently, review of the other *Barker* factors is unnecessary.

The Court notes, nevertheless, that Petitioner also has not established actual prejudice as a result of the alleged delay. He claims that the delay enabled Shannon Yancey to give a second statement to the police, and it enabled the prosecutor to coach the prosecution witnesses. However, there is no evidence in the record suggesting that the prosecutor delayed the trial for an improper purpose. The Court concludes that the trial court's denial of Petitioner's motion to dismiss on speedy trial grounds was not contrary to, or an unreasonable application of, *Barker*.

### F. The Sentence

The tenth habeas claim alleges that the sentence should be vacated because the trial court failed to explain why it sentenced Petitioner at the high end of the sentencing guidelines. Petitioner alleged on direct review of his convictions that his sentence was disproportionate. The Michigan Court of Appeals opined that Petitioner's sentence was presumptively proportionate because it fell within the sentencing guidelines.

To the extent that Petitioner is raising the same claim here and is relying on Michigan

14

Court Rule 6.425(D)(2)(e) to support his argument,[1] his claim is not cognizable, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Moreover, a plurality of the Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id*. at 1001 (Kennedy, J., concurring) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003).

Petitioner received a sentence of twenty-five to fifty years for his murder conviction. He was twenty-nine years of age at the time, and he could have been sentenced to life imprisonment or any term of years. *See* Mich. Comp. Laws § 750.317. His sentence was legal under state law, and even a "sentence of forty to sixty years for second-degree murder "is neither 'extreme' nor 'grossly disproportionate' so as to violate the Eighth Amendment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (citing *Harmelin*, 501 U.S. at 959). Therefore, the sentence of twenty-five to fifty years was not extreme or grossly disproportionate, and the state appellate court's decision was not contrary to, or an unreasonable application of, *Harmelin*. Petitioner has no right to habeas relief on the basis of his sentencing claim.

### G.  Cumulative Effect of Errors

The eleventh and final habeas claim alleges that the cumulative effects of the errors

---

[1] Rule 6.425(D)(2)(e) requires trial courts to "articulate [their] reasons for imposing the sentence given."

15

combined to deprive Petitioner of his constitutional rights to due process of law and a fair trial. This claim lacks merit because constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Furthermore, the Court's confidence in the outcome of the verdict is not undermined by the alleged errors, even when combined. *Cf. Tinsley v. Million*, 399 F.3d 796, 816 (6th Cir.), *cert. denied*, __ U.S. __, 126 S. Ct. 760 (2005).

## IV.  Conclusion

Petitioner's claims lack merit, and the state courts' rejection of the claims was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the habeas corpus petition [Doc. #1, May 11, 2004] is DENIED. Petitioner's pending motion for extension of time to file a reply to Respondent's answer [Doc. #29, Jan. 12, 2006] is DENIED as moot, because Petitioner filed his reply after he moved for an extension of time.

                                                    s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT JUDGE

Date: May 3, 2006